UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
     v.                             )   Criminal No. 09-0253 (PLF)
                                    )
IYASU BAZEZEW (5),                  )
BIRHANU GEBREGZIABHER (8),          )
TURA BURKA GEMEDA (10),             )
SALAHADIN A. HAGOS (12),            )
BAHIRU G. HAILEGEBREAL (13),        )
OMAR H. HASSEN (15),                )
OMAR M. HUSSEN (18),                )
ABUDAWOD ALI HUSSIEN (19),          )
FEYSAL JEMAL MOHAMED (24),          )
ETANA ENGEDA SHUREMU (26),          )
YONAS TADESSE (28),                 )
ESMAEL ABDULBASIT TAHIR (29),       )
ZELALEM A. TAREKEJN (30),           )
FASIL REGASSA WAKJIRA (32),         )
ASHENAFI TESFAYE WORKU (35),        )
and AMEZENE A. ZEWDIE (37),         )
                                    )
     Defendants.                    )
                                    )
_____ )

OPINION AND ORDER

The Superseding Indictment filed in this case on March 8, 2011 charges 21 individuals with one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371, and one count each of payment of a bribe to a public official in violation of 18 U.S.C. § 201(b)(1)(A). Each of the defendants is charged with paying a bribe to the Chairperson of the District of Columbia Taxicab Commission and of conspiring with others to give cash to him in return for his agreement to issue taxicab operator licenses to them. A number of the 21 defendants

(in earlier iterations of the indictment, there were 37 defendants) have pled guilty to misdemeanor offenses and Suraphel Ayalew to a felony since the return of the Superseding Indictment on March 8, 2011.[1] The Court heard oral argument on numerous motions filed by counsel for the remaining 16 defendants during the entire day of May 6, 2011.

After a day of arguments, the most troubling questions for the Court are (1) whether to sever some of the defendants from others and how to divide them up for purposes of trial; and (2) whether to make a preliminary determination prior to trial of whether there is proof of a conspiracy involving these defendants and to decide on the admissibility of proffered co-conspirator statements.[2] The resolution of these two troubling issues would be easier for the Court if it (and the defendants) had more information before reaching its decisions; such information might be made available through various procedural mechanisms discussed in this Opinion.

### A. Rule 14(b) Statements

No one argues that these 16 defendants were not properly joined together in the Superseding Indictment under Rule 8(b) of the Federal Rules of Criminal Procedure. Rather, the argument is that some of them should be severed under Rule 14(a) of the Rules, which provides that if joinder of defendants in an indictment "appears to prejudice a defendant . . . , the court

---

[1] There were originally 37 defendants indicted in this case; as of this writing, 21 have pled guilty.

[2] Eleven or twelve of the remaining 16 defendants seek a severance from the others. Defendants Birhanu Gebregziabher, Omar H. Hassen, Omar M. Hussen, Feysal Jemal Mohamed, and Etana Engeda Shuremu announced through their counsel at the hearing that they do not join the motions for severance. The Court is not certain whether defendant Zelalem A. Tarekejn joins the motions for severance or opts out of those motions.

may . . . sever the defendants' trials." FED. R. CRIM. P. 14(a). The Supreme Court has said that a court should grant a severance under Rule 14(a) "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Court went on to say:

> For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S. Ct. 1239, 1252-1253, 90 L. Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

*Zafiro v. United States*, 506 U.S. at 539. Defendants invoke both the *Kotteakos* and *Bruton* examples discussed by the Supreme Court in *Zafiro*.

In this case, the primary argument defendants make in favor of severance is this: (1) There is no evidence that any of the alleged co-conspirators knew any of the other alleged co-conspirators before they appeared at the Chairperson's office to complete applications and provide fingerprints on September 11, 18, or 20, 2009, respectively; (2) there is no evidence that any of the alleged co-conspirators knew the Chairperson prior to that day, which is problematic because (3) the alleged conspiracy began on September 3, 2009, the date Yitbarek Syume and Suraphel Ayalew met with the Chairperson unbeknownst to these defendants; (4) most of the alleged co-conspirators did not know and had not had any contact with the primary architects of the conspiracy, Mr. Syume and Mr. Ayalew, before September 11, 18, or 20; (4) the sealed envelope containing cash that each defendant handed to the Chairperson that day was provided to

him by Mr. Syume or Mr. Ayalew just before each met with the Chairperson; (5) with such weak evidence against them, there would be a prejudicial spillover or transference of guilt if the moving defendants were tried together with those defendants who gave confessions or made post-arrest statements; and (6) it would be difficult for the jury to compartmentalize the evidence introduced against each individual defendant, particularly if such post-arrest statements implicated defendants other than the declarants but even, in the circumstances of this case, if they did not.[3]

Before deciding the question of severance under Rule 14(a), the Court will invoke its prerogative under Rule 14(b) of the Federal Rules of Criminal Procedure, which provides: "Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." FED. R. CRIM. P. 14(b). The purpose of Rule 14(b) is to "address the problem of a co-defendant in a joint trial who made a pretrial incriminating statement." 1A CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE & PROCEDURE § 220 at 566 (2008). As the Advisory Committee Notes explain:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice.

---

[3] In addition to this primary argument for severance, the defendants also argue that there were in fact multiple conspiracies in this case rather than a single conspiracy as alleged in the Superseding Indictment and that the discovery to date shows a variance, perhaps a fatal variance, between the actual facts and those alleged in the Indictment. Some defendants make the additional argument that severance is required because of alleged entrapment or derivative entrapment.

4

ADVISORY COMMITTEE NOTES ON 1966 AMENDMENT TO FED. R. CRIM. P. 14. Accordingly, Rule 14(b) "provide[s] a procedure whereby the issue of possible prejudice can be resolved on the motion for severance." *Id*.

During the hearing, the government suggested that Rule 14(b) applies only to a defendant's post-arrest statements. The plain language of the Rule, however, provides no such limitation. Although a post-arrest statement may be especially relevant to a motion to sever as a source of prejudice as well as a potential constitutional violation, *see Bruton v. United States*, 391 U.S. 123 (1968), the Court, in analyzing a motion under Rule 14, is entitled to review not only such post-arrest statements but rather "any defendant's statement that the government intends to use as evidence." FED. R. CRIM. P. 14(b); see also 1A CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE & PROCEDURE § 220 at 566 (2008) (Rule 14(b) addresses the problem of "a pretrial incriminating statement" by a co-defendant).

In the government's post-hearing filing, it argues that Rule 14(b) does not require the disclosure of co-conspirator statements — which presumably includes any statements that may have been made by the remaining co-defendants, the 21 co-defendants who have already pled guilty, and unindicted co-conspirators — because the prejudice that motivated the Advisory Committee is not implicated when co-conspirator statements will be admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See* Government's Submission Regarding Scope of FED. R. CRIM. P. 14(b) at 1-2, May 9, 2011 [Dkt. No. 633]. The Court disagrees with respect to present and former co-defendants. The government may not exclude from the Court's inspection under Rule 14(b) a defendant's statement simply because the government *believes* that such statement qualifies as an admissible co-conspirator statement. The problem with the

government's argument is that it assumes that the Court ultimately will agree at trial that certain statements attributed to co-defendants are co-conspirator statements that are not hearsay under the Federal Rules of Evidence and therefore are admissible.

The Court will order the government to deliver for inspection "any defendant's statement that the government intends to use as evidence" at trial, FED. R. CRIM. P. 14(b) — regardless of when and under what circumstances such statement was made, regardless of whether the defendant has already pled guilty, and regardless of whether the government believes such statement will be admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence.[4] Unless the government proffers a good reason not to do so, it also shall provide the statements to defendants' counsel.[5]

### B. Rule 801(d)(2)(E) Statements

The defendants have also moved for disclosure of all co-conspirator statements. Specifically, they ask for all "statements, by whomever made, which the government will seek to attribute to [any] defendant, including but not limited to, statements by co-defendants or alleged co-conspirators, adoptive admissions or any other vicarious utterance" which may be attributed to any defendant under Rule 801(d)(2)(E) of the Federal Rules of Evidence. See Defendant's

---

[4] With respect to unindicted co-conspirators, for the reasons addressed elsewhere in this Opinion, the Court will direct the government to produce all co-conspirator statements that it intends to use as evidence at trial. See infra Part B.

[5] Defendant Fasil Wakjira has argued that the Court also should require the government to submit for *in camera* inspection any videotapes that the government intends to use as evidence. See Memorandum of Law at 13, May 5, 2009 [Dkt. No. 634]. The Court does not find it necessary to review such videotapes in order to resolve the motions to sever. Thus, the Court will not order the government to produce such videotapes for *in camera* inspection.

Motion for Disclosure at 1, Jan. 21, 2011 [Dkt. No. 522].[6] These statements, the defendants submit, also must be analyzed under *Bruton v. United States*, 391 U.S. 123 (1968). Finally, the defendants seek a pretrial hearing and preliminary pretrial determination by the Court on the admissibility of these statements by determining whether (1) a conspiracy even existed; (2) each of these defendants joined the conspiracy; (3) the co-conspirator who made the proffered statement and the defendant against whom the statement is offered were members of the same conspiracy; and (4) the statements were made in furtherance of the conspiracy.

In order to rule that a co-conspirator statement is admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence, the Court must find by a preponderance of the evidence that a conspiracy existed; that the defendant and the declarant were members of the same conspiracy; and that the statement in question was "'made in furtherance of the common goal'" of the conspiracy. *United States v. Loza*, Criminal No. 09-0226, 2011 WL 340290, at *2 (D.D.C. Feb. 4, 2011) (quoting *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006)). Any finding by the Court that the requirements of Rule 801(d)(2)(E) have been met must be based at least in part on some independent evidence of the conspiracy, that is, on evidence other than the statements whose admissibility is in question. *Id*. In *Loza*, this Court noted that the court of appeals has suggested that "the better practice" is for the trial court to determine the admissibility of such statements before the statements are presented to the jury, but that it is impractical in many cases for a court to do so. *See id.* at *3 (citing *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980)). The trial court therefore has "considerable discretion" to

---

[6] Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E).

proceed to trial and to admit particular statements, as they are offered, "subject to connection," a common practice used frequently to avoid mini-trials of the evidence in advance of the actual trial. *Id*. (internal citations and quotations omitted). Under this procedure, the trial court defers determinations regarding the admissibility of co-conspirator statements until the close of the government's case at trial. *See id*.

In view of the assertions made by the defendants in their motions and at the hearing, this may be one of those unusual cases where it would be prudent to follow the "better practice" of deciding before trial whether a conspiracy existed, whether these defendants were a part of it, and thus whether the proffered statements allegedly made in furtherance of the conspiracy should be admitted in evidence. Because such a pretrial determination of conspiracy and the admissibility of the alleged co-conspirator statements may be time-consuming, the Court will first direct the government promptly to produce to the Court and to the defendants all such co-conspirator statements that it intends to use as evidence at trial.[7] Only after reviewing these statements will the Court be able to determine whether it is necessary or appropriate to conduct what will undoubtedly be a lengthy pretrial hearing or, possibly, to employ some other recognized pretrial procedure.[8]

---

[7] It also will be easier to decide the *Bruton* motion to exclude any out-of-court statements made by co-defendants after these statements and the post-arrest statements of certain defendants are disclosed and reviewed. As the lawyer for one of the defendants put it at oral argument: "The *Bruton* problem may be embedded in the co-conspirator statements."

[8] The Seventh Circuit has endorsed a pretrial procedure known as a "*Santiago* proffer," whereby the government is required to file a written proffer setting forth its basis for the admissibility of any co-conspirator statements that the government intends to introduce at trial. *See United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Rodriguez*, 975 F.2d 404, 406 (7th Cir. 1992); *see generally United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). The Seventh Circuit has described this procedure as "an efficient method of making the preliminary [Rule] 801(d)(2)(E) determination." *United States v. Rodriguez*, 975 F.2d at 406.

*C. Discovery Motions*

Much of the motions hearing on May 6, 2011 was devoted to various discovery motions filed by the defendants, including discovery with respect to such categories as photographic identifications and identification procedures, various folders and records of Mr. Syume, various documents and records relating to conversations between Mr. Syume and the Chairperson of the Taxicab Commission, recordings made by the Chairperson during the investigation, instructions given by the FBI to the Chairperson, affidavits and returns relating to search warrants and Title III wiretaps, records of the Taxicab Commission, records of the University of the District of Columbia, transcripts of audio recordings, rough notes of FBI agents who interviewed Mr. Syume, Mr. Ayalew and those defendants who made post-arrest statements, the immigration status of all government witnesses, and matters relating to the bias, credibility and prior or subsequent misconduct or other bad acts of Mr. Syume and Mr. Ayalew. Some of these requests were made under Rule 16 of the Federal Rules of Criminal Procedure, some under *Brady v. Maryland*, 373 U.S. 83 (1963), some under *Giglio v. United States*, 405 U.S. 150 (1972), and some (prematurely) under the Jencks Act, 18 U.S.C. § 3500.

During the course of the hearing, the government asserted that it already had complied with many of the requests made by the defendants and represented that it fully intended to comply with others. For this reason, it would be premature and perhaps ultimately unnecessary for the Court to rule on all of these discovery requests now, when the points of disagreement between the parties seem to be narrowing. It therefore was agreed that the government would file a statement indicating what it had already done to comply with the various requests, what it would do to comply and by what dates, and what requests of the defendants it still opposes. Thereafter, the Court will rule on the pending discovery requests.

*D. Bill of Particulars*

Finally, the defendants ask the Court to direct the government to file a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure, in order to enable the defendants to better understand the substance of the charges against them and to prepare their defenses against these charges. They also suggest that it would be important to have the information they seek by way of a bill of particulars in order to demonstrate that the alleged co-conspirator statements should not be admitted because either there was no conspiracy or no conspiracy in which they were involved.[9]

Under Rule 7(f) of the Federal Rules of Criminal Procedure, it is within the discretion of the trial court to determine whether a bill of particulars should be provided, and the court should grant a motion for a bill of particulars to the extent it believes it is necessary to allow the defendants to adequately prepare for and avoid surprise at trial. *See United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006). A bill of particulars properly includes clarification of the indictment if necessary, but a bill of particulars is not a discovery device or a tool for allowing the defense to preview the government's theories or the government's evidence. *See id.*; *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). In other words, the purpose of a bill of particulars is to "inform the defendant of the substantive facts of the charges against him, but not to discover the evidentiary basis for the charges. The defendant is not entitled to know all the evidence the government will use against him at trial[,]" but he must be "adequately informed" of those charges so that he may prepare a defense for trial. *United States*

---

[9] It also was suggested during the hearing that a bill of particulars was required so that defense counsel could determine questions relating to issues of multiplicity, duplicity, and fatal variance, so they could then decide whether to move to dismiss the Superseding Indictment.

*v. Griffith*, 362 F. Supp. 2d 1263, 1277 (D. Kan. 2005) (internal footnotes omitted). With respect to the charge of conspiracy, the general rule is that the defendant is not entitled to obtain "detailed information about the conspiracy in a bill of particulars." *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004); *see also United States v. Murgas*, 967 F. Supp. 695, 702 (N.D.N.Y. 1997). Finally, it is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy. *United States v. Anderson*, 441 F. Supp. 2d at 19 (citing *United States v. Trie*, 21 F. Supp. 2d 7, 21 n.12 (D.D.C. 1998)).

With these principles in mind, the Court concludes that the defendants are entitled to a bill of particulars providing some but not most of the information they seek. For example, they are not entitled to know exactly how government law enforcement officials determined that each defendant was involved in the conspiracy; the exact date, time, and place when the conspiracy began; the conduct of all co-conspirators in furtherance of the conspiracy that was known to each individual defendant; the names, addresses, and telephone numbers of all persons having information or knowledge of each defendant's involvement in the conspiracy; the identity of all persons known by the government to have participated in each alleged overt act; or a description of the nature of all acts or statements that each defendant allegedly engaged in or uttered in support of or in furtherance of the conspiracy.

On the other hand, Count One of the Superseding Indictment (the conspiracy count) provides very little information and not nearly enough to allow the defendants to prepare for trial or to avoid surprise at trial. It charges that while the conspiracy began on September 3, 2009, none of the 16 remaining defendants took an overt act in furtherance of the conspiracy

until, in the case of some, September 11, 2009; in the case of others, September 18, 2009; and in the case of still others, September 20, 2009. Indeed, the Indictment alleges only a single overt act by each of these 16 defendants — namely, that each met with the Chairperson of the Taxicab Commission and paid cash to him for a taxicab operator license on a specific date. There is no suggestion in the Indictment that any of the 16 defendants did anything either before or after that one act on that specific date to join the conspiracy or to further its goals. For these reasons, it seems to the Court that the defendants will not be able to adequately prepare for trial or avoid surprise at trial if they are not provided a bill of particulars that provides at least the following: (1) a description of any overt act taken by each of the 16 remaining defendants prior to September 11, September 18, or September 20, 2009, respectively; (2) the identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether they have been indicted or previously have pled guilty and regardless of whether they will be called as trial witnesses; and (3) the approximate date of any conversations between any of the 16 remaining defendants and any purported co-conspirators that preceded September 11, 2009. *See United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004); *United States v. Murgas*, 967 F. Supp. at 702; *see also United States v. Ramirez*, 54 F. Supp. 2d at 30.[10]

---

[10] In *Ramirez*, the government conceded that the only evidence it had with respect to two of the seven defendants was a single attempted sale of a small amount of narcotics at the tail end of a year-long conspiracy involving kilograms of narcotics. *United States v. Ramirez*, 54 F. Supp. 2d at 30. It further conceded that it may have had no evidence of when they joined the conspiracy. *Id*. In those circumstances, the Court ordered the government to provide the defendants with a bill of particulars "setting forth the names of all persons the government would claim at trial were co-conspirators (whether or not they [would] be called as trial witnesses), the approximate dates and locations of any meetings or conversations not already identified in the indictment in which each defendant allegedly participated, and the approximate date on which each defendant allegedly joined the conspiracy." *Id.*

For the foregoing reasons, it is hereby

ORDERED that, by May 20, 2011, counsel for Zelalem A. Tarekejn shall file a notice with the Court stating whether he joins the motions for severance or opts out of those motions; it is

FURTHER ORDERED that, by May 27, 2011, counsel for the government shall deliver to the Court for inspection any defendant's statement — including statements of defendants who already have pled guilty — that the government intends to use as evidence at trial; unless the government proffers a good reason not to do so, it also shall provide the statements to defendants' counsel; it is

FURTHER ORDERED that, by May 27, 2011, counsel for the government shall deliver to the Court and to defendants' counsel all co-conspirator statements that it intends to use as evidence at trial; it is

FURTHER ORDERED that, by May 27, 2011, counsel for the government shall file a statement indicating the status of each of the defendants' pending discovery requests that shall address at least the following:

(1) What the government has done to comply with the defendants' various requests;

(2) What the government will do to comply and by what dates; and

(3) Which discovery requests are, in the government's view, still outstanding and which the government still opposes; it is

FURTHER ORDERED that the motion for a bill of particulars [Dkt. No. 540] is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that, by May 27, 2011, the government shall provide the following particulars:

(1) A description of any overt act taken by each of the 16 remaining defendants prior to September 11, September 18, or September 20, 2009, respectively;

(2) The identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether such individuals have been indicted or previously have pled guilty and regardless of whether such individuals will be called as trial witnesses;

(3) The approximate date of any conversations between any of the 16 remaining defendants and any purported co-conspirators that preceded September 11, 2009.

SO ORDERED.


/s/
PAUL L. FRIEDMAN
DATE: May 11, 2011                          United States District Judge